IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH L. GEORGE, | : | 3:CV-07-0659 |
| Plaintiff | : | (Judge Vanaskie) |
| v. | : | |
| CIGNA GROUP INSURANCE COMPANY, | : | |
| Defendant | : | |

## MEMORANDUM

This matter is before the Court on the objections of Plaintiff Joseph L. George to the Report and Recommendation of Chief Magistrate Judge Thomas M. Blewitt proposing that judgment be entered in favor of Defendant Life Insurance Company of America ("LINA").[1] In support of this recommendation, Magistrate Judge Blewitt concluded that LINA was entitled to offset from its monthly long term disability payment to Mr. George the amount in wage loss benefits he was receiving from his automobile insurance carrier, Liberty Mutual. Mr. George argues that the Magistrate Judge erred in his interpretation of the applicable provisions of the group long term disability policy. Following *de novo* review of the record and plenary consideration of the issues, I concur with the Magistrate Judge's recommendation, albeit for reasons slightly different than those articulated by him.

---

[1] The parties agree that LINA is improperly identified in the Complaint as CIGNA Group Insurance Company.

Accordingly, judgment will be entered in favor of LINA.

I. BACKGROUND

The facts are not in dispute. Mr. George was injured in a non-work related automobile accident in January of 2006. At the time of the accident, Mr. George was an employee of PPL Services Corporation, and covered by a group Long Term Disability ("LTD") policy issued by LINA to Mr. George's employer. The LTD policy, in pertinent part, provides a disability benefit of "[t]he lesser of 60% of an Employee's Monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits." (LINA Group Policy LK-030562, attached as Exhibit "A" to the Complaint, Dkt. Entry 1-2 at 18.)[2] The maximum disability benefit payable to Mr. George is $5,000 per month. (Id.) The term "Other Income Benefits," which serve to reduce the disability benefit payable by LINA, is defined as "any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf." (Id.)

The "Other Income Benefits" provision of the LTD Policy explains that "[w]hile an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits." (Id. at 23.) The LTD Policy identifies a number of benefits

---

[2]For the convenience of the reader of this document in electronic format, hyperlinks to the record and authority have been inserted. The pagination for references to the record is the pagination created by the Court's Case Management/Electronic Case Filing System.

that reduce the amount otherwise payable by LINA, such as social security disability benefits, "any proceeds payable under any group insurance or similar plan," amounts an employee receives under "any local, state, provincial, or federal governmental disability or retirement plan or law . . . ," as well as any amounts the employee receives "under any unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits." (Id.)

At issue here are two examples of Other Income Benefits specifically listed in the LTD policy:

> (1) "any benefits received from coverage subject to the mandatory part of the vehicle financial responsibility law;" and

> (2) "any amounts paid on account of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined."

(Id.)

Mr. George has received monthly wage loss benefits of $1,500 under his personal automobile insurance policy with Liberty Mutual. Under the policy, he is entitled to a maximum wage loss payment of $25,000.

Mr. George received his first payment of LTD benefits in the amount of $2,823 on August 11, 2006. This amount represented 60% of his monthly Covered Earnings of $4,705.65. By letter dated October 4, 2006, LINA informed Mr. George that, as a result of receipt of information that he was being paid "No Fault Benefits in the amount of $1,500

3

monthly," it was reducing his monthly LTD payment by that amount.  As a result of its determination, Mr. George's net monthly benefit was reduced from $2,823 to $1,323 per month.  (Exhibit "C" to Defendant's Motion for Summary Judgment, Dkt. Entry 9-4 at 3.)  LINA also asserted that it was entitled to be reimbursed in the amount of $3,000, the amount that it claimed represented the overpayments for the prior two disability benefit payments it had made.

Mr. George brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA") on April 9, 2007.  He claims that LINA violated ERISA by not paying the full amount of the benefits to which he claims entitlement.  Specifically, Mr. George contends that wage loss payments made pursuant to the Liberty Mutual policy are not "Other Income Benefits" by which LTD benefits may be reduced.  Alternatively, Mr. George asserts that the wage loss payment may reduce only the $5,000 monthly maximum benefit payable by LINA.  Claiming that the policy provides for the payment of either the lesser of 60% of his covered earnings or the maximum disability benefit of $5,000 reduced by Other Income Benefits, Mr. George argues that, in any event, he is entitled to monthly payments of $2,823.

Agreeing that there is no genuine dispute as to any material fact, both Mr. George and LINA moved for summary judgment.  The motions are ripe for decision.

II. DISCUSSION

The parties have presented this case as one involving the interpretation of an insurance contract.[3] As explained in Twelveth Street Gym, Inc. v. General Star Indemnity Co., 93 F.3d 1158, 1165 (3d Cir. 1996):

> The goal of insurance contract interpretation is to 'ascertain the intent of the parties as manifested by the language of the policy.' Where the language of an insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning.
>
> . . . Whether an ambiguity exists is a question of law. Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous. But a contract is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'

"To determine whether ambiguity exists in a contract, the court may consider, among other things: (1) the words of the contract; (2) the alternative meaning suggested by counsel; and (3) the nature of the objective evidence to be offered in support of that meaning." Fed Ex Ground Package Sys., Inc. v. Applications Int'l Corp., Civil Action No. 03-

---

[3]Neither party addressed the applicable standard of review of decisions that concern benefits payable under an ERISA plan. In some circumstances, the decision of an ERISA plan administrator interpreting the provisions of an ERISA plan may be entitled to deference, subject to being set aside only if arbitrary or capricious. See e.g., Wyatt v. Unun Life Ins. Co., No. 97-C-8228, 1999 WL 116213, at *4-5 (N.D. Ill. March 2, 1999). Because LINA has not contended that this Court should review its determination under the arbitrary and capricious standard of review, applicable where the ERISA plan gives "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the *de novo* standard of review will be applied here.

Case 3:07-cv-00659-TIV   Document 18   Filed 03/05/09   Page 6 of 13

Case 3:07-cv-00659-TIV   Document 18   Filed 03/05/09   Page 6 of 13

1512, 2008 WL 4279751, at *5 (W.D. Pa. Sept. 12, 2008).  Contract interpretation requires that the court read "the contract in the context in which it was made." Pacitti v. Macy's, 193 F.3d 766, 773 (3d Cir. 1999).  The court is to look to the language of the contract, "taken as a whole," to determine the parties' intent. Sentry Paint Technologies, Inc. v. Topth, Inc., Civil Action No. 08-1064, 2008 WL 4787579, at *8 (E.D. Pa. Oct. 31, 2008).  "In addition, wherever possible, 'a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.  The policy must be construed as a whole, not in discrete units.'" J.C. Penney Life Ins. Co. v. Pilosi,  393 F.3d 356, 363 (3d Cir. 2004).

The LTD policy at issue here clearly expresses an intention to reduce disability benefits by other payments to which a claimant is entitled for lost income or earnings.  For instance, the LTD policy reduces the disability benefits otherwise payable for any amounts received pursuant to local, state, provincial, or federal government disability or retirement plans, any sick leave plan, social security disability benefits, retirement plan benefits, unemployment compensation payments, as well as "any wage or salary for work performed."  (Dkt. Entry 1-2 at 23.)

LINA asserts that the wage loss payments made under the Liberty Mutual policy fall within two explicitly delineated categories of "Other Income Benefits:"  (1) "any benefits received from coverage subject to the mandatory part of the vehicle financial responsibility law;" and (2) "any amounts paid on account of loss of earnings or earning capacity through

settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined."

Mr. George contends that wage loss payments made pursuant to his automobile insurance policy do not clearly fall within the types of "Other Income Benefits" identified by LINA in reducing its payments to him. In this regard, he asserts that "benefits received from coverage subject to the mandatory part of the vehicle financial responsibility law" could be interpreted to mean only those benefits that an insured is obligated to purchase. Pointing out that there is no obligation under Pennsylvania law to purchase wage loss coverage, Mr. George contends that LINA cannot rely on this part of the "Other Income Benefits" provision to reduce its obligation under the LTD policy.

LINA, pointing out that Pennsylvania law mandates insurance companies to offer wage loss coverage of up to $50,000, see 75 Pa. Cons. Stat. § 1715(a)(2), argues that the Liberty Mutual payments made to Plaintiff fall squarely within the Other Income Benefits offset provision. In other words, LINA argues that, because state law mandated Liberty Mutual to provide wage loss coverage, LINA is entitled to an offset under the LTD policy. Magistrate Judge Blewitt agreed with LINA's argument on this point.

Viewed from the perspective of the insured, the LTD policy is certainly capable of being read to mean that only those benefits for which the insured must purchase coverage are subject to being offset from the LTD payments. LINA would have an expectation of an

offset only up to the amount of coverage that the insured must procure. The insured, therefore, could provide greater wage protection by acquiring coverage limits beyond those that he must buy. Moreover, because the LTD policy entitles LINA to an offset in the amount that the claimant is "assumed to receive," providing an offset for benefits that the claimant must obtain provides certainty as to the amount of the offset.

Mr. George argues that because he has advanced a reasonable interpretation of this particular policy provision, judgment must be entered in his favor under the rule that ambiguities in insurance contracts must be resolved in favor of the insured. See Geisler v. Motorists Mut. Ins. Co., 556 A.2d 391, 393 (Pa. Super. Ct. 1989). This rule, however, applies only where the insurance policy, viewed in context and read as a whole, is ambiguous on the matter at issue. See Pilosi, 393 F.3d at 364.

The "Other Income Benefits" provision of the LTD policy reveals an intent to provide disability benefits on a net loss basis. The provision articulates in sweeping language a panoply of various payments that cover lost earnings that are to be set off against the LTD benefit. The contractual offset extends to pension and retirement payments, sick leave benefits, other disability payments, unemployment compensation, and any earnings for work performed by the claimant.

Included within the listing of "Other Income Benefits" are "any amounts paid on account of loss of earnings . . . through settlement, judgment, arbitration or otherwise,

8

where a third party may be liable, regardless of whether liability is determined." (Dkt. Entry 1-2 at 23.)  It is indisputable that wage loss coverage under the Liberty Mutual policy affords payments for "loss of earnings."  Moreover, Liberty Mutual is plainly a "third party" in relation to Mr. George and LINA.  Finally, Liberty Mutual's liability is to make payments "on account of loss of earnings."  Clearly, this part of the "Other Income Benefits" provision applies to the wage loss payments made by Liberty Mutual.

Plaintiff asserts that this provision cannot apply because wage loss benefits are identified under the Pennsylvania Motor Vehicle Financial Responsibility Law as "first party" benefits, citing 75 Pa. Cons. Stat. § 1701.  The characterization of payments in legislation, however, does not defeat the plain and unambiguous terms of the LTD policy.  There is no indication that the LINA policy used "third party" in the same sense that insurance legislation may use that term.  Nor is there any indication of an intent to exempt from the offset provision payments that may be characterized as "first party" benefits under contractual arrangements between the claimant and another insurance company.  In this case, the "first parties" to the LINA policy are Mr. George and LINA, and everyone else is a "third party."

As noted above, the determination of whether a policy provision is ambiguous is to be based upon an examination of the entire policy.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).  As in Pilosi, 393 F.3d at 365, "[t]his is not a case where the insurance policy as a whole fails to provide the court with any

additional tools to tease out the disputed phrase's alleged plain meaning." The LINA LTD policy, read as a whole, evinces an intention that disability benefits be reduced by whatever other payments are received by the claimant that represent compensation for lost earnings on account of the claimant's absence from work with the employer procuring the LTD benefits. Thus, read in context and in its entirety, the LTD policy clearly provides that wage loss payments received by Mr. George from Liberty Mutual are to be set off against the LTD payments to be made by LINA.

      Plaintiff argues that even if the policy provides for an offset for wage loss payments made by Liberty Mutual, the offset is to be made only from the maximum benefit and not from the amount that represents 60% of his covered earnings. The policy defines the amount payable as "[t]he lesser of 60% of an Employee's Monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits." (Dkt. Entry 1-2 at 18.) Plaintiff contends that the phrase "reduced by any Other Income Benefits" modifies only the "Maximum Disability Benefit," and not the entire clause that defines the amount payable. Thus, Plaintiff contends that he is entitled to the lesser of 60% of covered earnings ($2,823) or the maximum benefit reduced by the Liberty Mutual wage loss payment ($5,000 - $1,500 = $3,500). Under Plaintiff's reading of the contract, he remains entitled to a payment of $2,823, and LINA breached the policy by reducing his monthly LTD benefit to $1,323.

Plaintiff's argument would have force if the provision in question read as follows: "The disability benefit equals the lesser of 60% of an Employee's Monthly Covered Earnings rounded to the nearest dollar, or the Maximum Disability Benefit reduced by any Other Income Benefits." But the placement of the comma at the end of the entire clause makes it clear that the offset is against the lesser of 60% of covered earnings or the maximum benefit payable. Again, the policy, read in context and in its entirety, leaves no doubt that the intention was provide LTD benefits calculated as a percentage of actual lost earnings subject to a cap, with LINA reducing its liability by other wage loss payments received by the claimant. In this case, the "Disability Benefit" is the lesser of 60% of covered earnings or the "Maximum Disability Benefit." The comma at the end of the definition of "Disability Benefit" signifies that the Disability Benefit is subject to reduction, not just the "Maximum Disability Benefit." As LINA argues, the policy plainly contemplates that there will first be a calculation of the "Disability Benefit," i.e., the lesser of 60% of covered earnings or the Maximum Disability Benefits," and then the offset is to be applied.

III. CONCLUSION

For the reasons set forth above, the Report and Recommendation of Magistrate Judge Blewitt will be adopted, and the summary judgment motion of LINA will be granted. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH L. GEORGE, | : | 3:CV-07-0659 |
| Plaintiff | : | (Judge Vanaskie) |
| v. | : | |
| CIGNA GROUP INSURANCE COMPANY, | : | |
| Defendant | : | |

## ORDER

NOW, THIS 5th DAY OF MARCH, 2009, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge Blewitt (Dkt. Entry 15) is ADOPTED.

2. Plaintiff's Motion for Summary Judgment (Dkt. Entry 10) is DENIED.

3. Defendant's Motion for Summary Judgment (Dkt. Entry 9) is GRANTED.

4. The Clerk of Court is directed to enter judgment in favor of Defendant, and to mark this matter CLOSED.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge